**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| LATAVIA CURRY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 3:25 C 50455 |
| | ) | |
| CITY OF ROCKFORD, ILLINOIS; | ) | Judge Rebecca R. Pallmeyer |
| ROCKFORD POLICE DEPARTMENT; | ) | |
| OFFICER KEVIN CASE, OFFICER | ) | |
| BRANDON ESPARZA, and the ILLINOIS | ) | |
| DEPARTMENT OF CORRECTIONS, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

On December 29, 2021, Kameron Curry was shot by a known offender, Coreyeon Young. After the shooting, Kameron and his mother, Plaintiff Latavia Curry, were transported by police officers to the hospital, where Kameron died from his injuries and Ms. Curry claims she herself was detained and interrogated. In this lawsuit, Ms. Curry alleges that law enforcement misconduct and negligence—particularly the officers' decision to transport Kameron themselves rather than waiting for an ambulance—contributed to her son's death. She filed this lawsuit pursuant to 42 U.S.C. § 1983, bringing claims under the state-created danger doctrine, the due process clause, and the Fourth Amendment, as well as various state tort claims. Defendants have moved to dismiss, arguing that Ms. Curry's claims are time-barred. As explained below, the court recognizes that Ms. Curry has suffered a tragic loss, but agrees that this lawsuit was filed well past the statute of limitations. Defendants' motion to dismiss is granted.

## BACKGROUND

The facts laid out below are taken from Plaintiff's Amended Complaint [27], which the court accepts as true at the pleading stage. *See Ruiz v. Pritzker*, 162 F.4th 886, 889 (7th Cir. 2025). On December 29, 2021, Ms. Curry's son, Kameron Curry, was fatally shot by Coreyeon Young, who Ms. Curry characterizes as "a violent offender with a lengthy criminal record and an

outstanding murder warrant." (Am. Compl. [27] ¶ 2.) Curry alleges that Young had multiple pending violent felony charges, but the Rockford Police Department did little to monitor or apprehend him. (*Id.* ¶ 3.) Following the shooting, Defendants Brandon Esparza and Kevin Case, presumably officers of the Rockford Police Department, transported Ms. Curry and her son to the hospital instead of waiting for licensed EMS to arrive on scene. (*Id.* ¶ 5.) At the hospital, Ms. Curry claims she was unconstitutionally "detained and interrogated" by officers. (*Id.*) Specifically, she contends that officers "restrained" and "controlled" her movements, and prevented her from visiting her son while he was dying. (*Id.* at 7.)

On October 28, 2025, Ms. Curry and Mr. Maurkice Foye, Kameron's stepfather, filed a *pro se* complaint [1] in this court, and an amended complaint [27] on December 15, 2025. Ms. Curry's First Amended Complaint brings four federal-law claims under § 1983: state-created danger (Count I); deprivation of life without due process (Count II); unlawful detention (Count III); and a municipal liability *Monell* claim (Count IV). She also brings several Illinois law claims, including wrongful death (Count V); willful and wanton misconduct (Count VI); negligent supervision and retention (Count VII); intentional infliction of emotional distress (Count VIII); and negligent infliction of emotional distress (Count IX). Defendants then moved to dismiss pursuant to FED. R. CIV. P. 12(b)(6), Mr. Foye responded by voluntarily dismissing [40] his claims.

Ms. Curry then responded to the motion to dismiss, and moved for leave to file a second amended complaint. Her proposed second amended complaint adds additional color to her allegations. She alleges that she learned for the first time in December 2023 that her son's transportation to hospital by police officers, rather than EMS, was contrary to protocol. (Prop. Second Am. Compl. [41-1] ¶ 8.) She also claims that she learned in December 2023 that certain internal findings and information regarding officer conduct had not been previously disclosed to her, although she does not provide specifics on what this information is or how it was withheld from her. Finally, she contends that on March 7, 2025, she learned that that Officer Esparza was no longer employed with the Rockford Police Department; she claims this somehow provided her

2

with clarification regarding which officer was responsible for transporting Kameron Curry. (*Id*. ¶ 13.) Later that same day, Ms. Curry submitted Freedom of Information Act requests to the Rockford Police Department, Rockford Fire Department, and EMS personnel and related agencies. (*Id*. ¶¶ 15-18.)

The court entered and continued the motion for leave to file the second amended complaint [43], and Defendants filed a reply brief [45] in support of their motion to dismiss. The court has not yet ruled on Ms. Curry's motion, but nevertheless has considered the allegations in her proposed Second Amended Complaint. Even drawing inferences in her favor, the court concludes, as explained here, that those allegations, presumed true at this stage, do not cure the timeliness problem

## **DISCUSSION**

### I. **Motion to Dismiss**

Defendants have moved to dismiss Ms. Curry's claims as barred by the statute of limitations. Timeliness is an affirmative defense and ordinarily need not be addressed in a pleading to survive a motion to dismiss. *See Reilly v. Will Cnty. Sheriff's Off.*, 142 F.4th 924, 930 (7th Cir. 2025). But dismissal on motion is proper when the facts alleged in the complaint clearly "establish that the statute of limitations bars recovery." *Milchtein v. Milwaukee Cnty.,* 42 F.4th 814, 822 (7th Cir. 2022).

In this case, Plaintiff's own allegations make clear that any claims arising from the December 29, 2021, shooting are time-barred. "Claims under § 1983 borrow the statute of limitations for personal injury actions in the state in which the cause of action arose," *Cielak v. Nicolet Union High Sch. Dist.*, 112 F.4th 472, 477 (7th Cir. 2024)—in Illinois, two years, 735 ILCS 5/13-202. "As a general matter, a statute of limitations begins to run when the cause of action 'accrues'—that is, when 'the plaintiff can file suit and obtain relief.'" *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 105 (2013). A claim accrues "when a plaintiff knows the fact and

the cause of an injury." *Amin Ijbara Equity Corp. v. Vill. of Oak Lawn*, 860 F.3d 489, 493 (7th Cir. 2017) (internal citations omitted).

The facts giving to Ms. Curry's claims occurred on December 29, 2021. Thus, in order to be timely, this lawsuit must have been brought on or before December 29, 2023. This lawsuit was filed on October 28, 2025, nearly two years after the deadline. In response to Defendants' motion to dismiss, Ms. Curry contends that her claims did not accrue until much later. She argues that, prior to December 2023, she had "no reason to suspect that law enforcement conduct contributed to the medical outcome." (Pl.'s Opp'n [42] at 3.) Specifically, Ms. Curry alleges that in December of 2023, she learned that "EMS personnel were available, [but] police officers transported [Kameron Curry], and the established medical response procedures may have been bypassed." (*Id.*) Thus, in her view, the statute of limitations "did not begin until [she] knew or should have known Defendants' role" which occurred in December 2023. (Am. Compl. [27] at 3.) This discussion appears to be an invocation of the so-called "discovery rule," under which an injury does not accrue until a plaintiff realizes that she has been injured. *See, e.g., Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990) ("The rule that postpones the beginning of the limitations period from the date when the plaintiff is wronged to the date when he discovers he has been injured.") This rule does not apply here. Ms. Curry was physically present during all of the events underlying the case: she alleges that she rode with Defendant Officers to the hospital, and that she was detained and interrogated by officers while there and not allowed to see her son. She was thus aware of the injuries at the time they occurred, even if she was not aware of the particular evidence that she could use to bring her case or that the law entitles her to relief. *See Towne v. Donnelly*, 44 F.4th 666, 670 (7th Cir. 2022) (stating that "a claim under § 1983 accrues when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief" (citation and quotations omitted)).

To the extent that Ms. Curry is advancing an argument for equitable tolling of the statute of limitations, she has not demonstrated that she is entitled to such relief. For Ms. Curry's federal

4

law claims, the court applies Illinois equitable tolling doctrine. *Bryant v. City of Chi.*, 746 F.3d 239, 243 (7th Cir. 2014) ("Because we apply Illinois's statute of limitations, we also apply Illinois's equitable tolling principles [in § 1983 cases]"). Under Illinois law, "equitable tolling of a statute of limitations may be appropriate if the defendant has actively misled the plaintiff, or if the plaintiff has been prevented from asserting his or her rights in some extraordinary way, or if the plaintiff has mistakenly asserted his or her rights in the wrong forum." *Am. Fam. Mut. Ins. Co. v. Plunkett*, 2014 IL App (1st) 131631, ¶ 32, 383 Ill. Dec. 393, 14 N.E.3d 676, 681 (2014). "Extraordinary barriers include legal disability, an irredeemable lack of information, or situations where the plaintiff could not learn the identity of proper defendants through the exercise of due diligence." *Id*. No extraordinary barriers exist here. As noted, Ms. Curry was physically present and thus aware of the circumstances giving rise to her claims at the time they arose. She has not alleged that she mistakenly filed this lawsuit in the wrong forum, that Defendants impeded her ability to bring this claim or identify Defendants, or anything else suggesting that equitable tolling is proper.

In filing her proposed amended complaint, Ms. Curry further argues that "critical information regarding[] EMS staging and exclusion, [o]fficer transport decisions, [i]nternal findings and reports, [t]he identity and role of involved officers, was not disclosed at the time of the incident." (Pl.'s Opp'n [27] at 4; Proposed Second Am. Compl. [41-1] ¶¶ 6–9.) She claims that she first learned the officers' transport decision was violative of protocol in December 2023, and that certain (undescribed) information was "concealed" by the police. (Proposed Second Am. Compl. [41-1] ¶ 8.) She also claims that she first learned that one of the involved officers had left the police force on March 7, 2025, and that this information provided her with clarification regarding which officer was responsible for transporting Kameron. (*Id.* ¶ 13). She claims that "[t]he material facts necessary to understand the role of municipal actors were not disclosed to [her] at [the time of the incident]" and that the police force's failure to disclose them to her was responsible for her delay in filing suit. (*Id*. ¶ 7.)

5

This appears to be an argument for equitable estoppel, which "allows an otherwise time-barred claim to proceed where the delay in filing was caused by a defendant's improper acts." *Billups-Dryer v. City of Harvey*, No. 23 C 2429, 2024 WL 4278016 at *5 (N.D. Ill. Sept. 24, 2024) (citing *Shropshear v. Corp. Couns. of City of Chi.*, 275 F.3d 593, 595 (7th Cir. 2001)). Under Illinois law, "equitable estoppel is available only when the defendant has used misrepresentations or concealment—rather than threats of reprisal—to prevent the plaintiff from suing." *Holland v. Brown*, 457 F.3d 688, 694 (7th Cir. 2006). There is no allegation suggesting any such misconduct on the part of Defendants; although she alleges that police department findings were "concealed," the facts she alleges simply establish that the police department did not voluntarily provide her with information. (Proposed Second Am. Compl. [41-1] ¶ 9 ("Prior to this time [December 2023], Plaintiff had not been informed that the transport decision may have deviated from protocol or that EMS personnel had been staged or excluded from transporting the child.").) But they had no obligation to provide this information. In any event, discovery of a violation of protocol or of police department policy is not the same thing as discovery that the Constitution or federal law has been violated. *See Thompson v. City of Chi.*, 72 F.3d 444, 454 (7th Cir. 2006) ("'42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices.'"); *see also Courtney v. Butler*, 66 F.4th 1043, 1052 (7th Cir. 2023) ("failure of officials to comply with departmental regulations or even state law does not necessarily violate the Constitution.").

Ms. Curry did not need any evidence of officer transport decisions, internal findings, or the identity of the involved officers in order to launch this lawsuit in federal court. It is not unusual for a plaintiff to be uncertain about specific officer identities prior to filing a lawsuit; such information usually comes to light in discovery. Curry ultimately discovered Officer Esparaza's identity on March 7, 2025—but she does not explain why even then she failed to file her complaint until October, nor why she could not have brought a lawsuit against the other Defendants within the time frame required by the statute of limitations. Though Curry understands the timeliness

objection, she has not alleged or even suggested that she diligently pursued the information she believes was necessary to bring this case in the years following her son's death, rendering equitable tolling of the statute of limitations inappropriate.

For these reasons, Curry's federal law claims are barred by the statute of limitations. With all federal claims dismissed from this lawsuit, the court relinquishes supplemental jurisdiction over her remaining state law claims. 28 U.S.C. § 1367(c)(3); *RWJ Mgmt. Inc.. v. BP Prods. N. Am., Inc.,* 672 F.3d 476, 479 (7th Cir. 2012). She may raise those in state court, if she so chooses.

\* \* \* \* \*

The circumstances that resulted in this lawsuit are heartbreaking. Nothing can replace the loss of one's child, and the court expresses its deepest sympathies to Ms. Curry and others who loved her son. A lawsuit against law enforcement officers is, however, untimely.

## **CONCLUSION**

Defendants' motion to dismiss [38] is granted.


ENTER:


Dated: August 5, 2026

_____
REBECCA R. PALLMEYER
United States District Judge

7